OPINION
{¶ 1} Defendant-appellant, Shawn Bowling, appeals his conviction by the Clinton County Court of Common Pleas for the charge of rape involving his eight-year-old nephew ("D.S."). We affirm the judgment for the reasons outlined below.
 {¶ 2} On May 19, 2001, D.S. and his family attended a gathering that also included appellant and his family. D.S. and his younger sister went home with and stayed overnight at appellant's home. D.S. had stayed over at appellant's home many times previously. During those occasions, appellant's wife and D.S.'s aunt, Sherry Bowling ("Mrs. Bowling"), would sleep elsewhere in the house and D.S. would sleep in appellant's bed with appellant.
 {¶ 3} Mrs. Bowling testified that appellant had several beers at the party and told her he had used a sedative earlier at work. Mrs. Bowling indicated that she was angry that appellant had agreed to let D.S. stay over night without her permission. She testified that she later rebuffed appellant's sexual advances because she was angry.
 {¶ 4} Appellant was upstairs in his bedroom while D.S. and the other children in the house were watching television downstairs. Later in the evening, D.S. went upstairs and watched television with appellant on his bed.
 {¶ 5} Some time later, Mrs. Bowling opened the closed door of appellant's bedroom and observed D.S. positioned perpendicular to appellant. D.S.'s face was in the area of appellant's waist. Appellant was holding up the elastic waistband of his shorts. Both D.S. and appellant jumped when Mrs. Bowling opened the door. D.S. quickly sat up on his knees and appellant released his waistband. D.S. was observed immediately wiping his mouth.
 {¶ 6} Mrs. Bowling confronted appellant, but he repeatedly denied anything occurred. D.S. told Mrs. Bowling that appellant told him to do it, but would not explain. Mrs. Bowling testified that appellant kept interrupting her attempts to question D.S., so she eventually took D.S. to the bathroom to talk with him. Mrs. Bowling asked D.S., "Did Uncle Shawn tell you to suck his dick?" D.S. answered that question in the affirmative. D.S. pleaded with Mrs. Bowling not to tell D.S.'s father because D.S. feared that his father would be mean to him if he learned about the incident.
 {¶ 7} After D.S. went downstairs, Mrs. Bowling again confronted appellant, who was still reclining on the bed. Mrs. Bowling admitted that she was yelling at appellant about the incident. Mrs. Bowling said that she pulled down appellant's shorts and observed that appellant's penis was soft and was pointing straight up toward appellant's navel. Appellant told his wife that he did not know why his penis was in that position. Mrs. Bowling indicated that appellant did not appear to be angry, but stated that "he wasn't going to jail for something he didn't do."
 {¶ 8} Mrs. Bowling told appellant to leave the house, but instead placed all of the children in the car and drove appellant to his workplace. D.S. sat next to appellant in the front seat because children's car seats were placed in the rear seat.
 {¶ 9} The next day, D.S.'s father picked up D.S. and his sister. D.S. testified that during the ride home he told his father what had occurred with appellant. Appellant was charged with rape and found guilty by a jury. Appellant appeals, raising two assignments of error.
Assignment of Error No. 1
"Appellant's conviction, as a matter of law, was not supported by legally sufficient evidence[.]"
 {¶ 10} In resolving the sufficiency of the evidence argument, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of syllabus.
 {¶ 11} Appellant argues that there was insufficient evidence of sexual conduct with D.S. Appellant stresses that there was no physical evidence of the sexual conduct.
 {¶ 12} The section under which appellant was charged, R.C.2907.02(A)(1), states that no person shall engage in sexual conduct with another who is not the spouse of the offender * * * when any of the following applies: (b) The other person is less than 13 years of age, whether or not the offender knows the age of the other person. R.C.2907.02(A)(1)(b).
 {¶ 13} "Sexual conduct" means vaginal intercourse between a male and female, anal intercourse, fellatio and cunnilingus between persons regardless of sex; * * *. R.C. 2907.01(A). "Fellatio" is defined by Black's Law Dictionary as "a sexual act in which the mouth or lips come into contact with the penis." Black's Law Dictionary (6 Ed. 1990) 616.
 {¶ 14} D.S. testified that he was eight years of age and recited his birth date. D.S. also testified that he was not married to appellant. D.S. told the jury that appellant asked him to "suck his dick," and that D.S. did it one time. When asked how he did this, D.S. replied that he did it "up and down." D.S. stated that "dick" was a "boy's private" located between the legs. D.S. described appellant's "private" and stated that he had never seen an adult's private before. When cross-examined by appellant, D.S. said that he was "sucking on Shawn's dick" when Mrs. Bowling entered the bedroom. Further, we previously noted the testimony of Mrs. Bowling that she observed the position of the bodies, the startled response, and D.S. wiping his mouth.
 {¶ 15} A police detective experienced in investigating sexual abuse cases testified that no physical evidence was recovered in this case. The detective also testified that it is not unusual to find no physical evidence of sexual abuse, particularly when no ejaculation is alleged to have occurred.
 {¶ 16} Appellant argues that D.S. was not credible because there were some inconsistencies in his testimony. Appellant also argues that his wife erroneously jumped to conclusions when she entered the room because she was already angry with appellant. Those specific arguments raised by appellant will be addressed during our discussion of appellant's second assignment of error, which deals with the manifest weight of the evidence.
 {¶ 17} Having reviewed the evidence, we find that any rational trier of fact could have found the essential elements of the crime of rape of a person under the age of 13 beyond a reasonable doubt. The conviction was supported by legally sufficient evidence. Appellant's first assignment of error is overruled.
Assignment of Error No. 2
"Appellant's conviction should be reversed because it is contrary to the manifest weight of the evidence."
 {¶ 18} In determining whether a conviction is against the manifest weight of the evidence, the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 19} We must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967), 10 Ohio St.2d 230. A unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required to reverse a judgment of a trial court on the weight of the evidence in a jury trial. Thompkins at 389.
 {¶ 20} We previously outlined the testimony of D.S. and Mrs. Bowling concerning the evening of May 19, 2001. We also discussed the testimony of the police detective about the absence of physical evidence here and in sexual abuse cases.
 {¶ 21} On cross-examination, Mrs. Bowling testified that she chose to disregard appellant's denials the evening of the incident, but had reconsidered. Mrs. Bowling admitted that she did not see anything wrong occurring when she opened the bedroom door. Appellant argued that D.S. was only agreeing that oral sex took place because appellant's wife suggested it.
 {¶ 22} Appellant testified in his own defense that D.S. was reaching for and smoking appellant's cigarette from the ashtray when Mrs. Bowling walked in the bedroom. Appellant stated that the cigarette smoking was the activity D.S. wanted to conceal.
 {¶ 23} Appellant testified that he was asleep on the bed and awakened when D.S. came into the bedroom. Appellant also explained that his penis was pointed toward his navel because he had been masturbating before D.S. came upstairs. Mrs. Bowling had previously testified that appellant could not explain when she confronted him why his penis was pointing toward his navel.
 {¶ 24} Appellant asks this court to consider the discrepancies in D.S.'s testimony. Appellant notes that D.S. testified that he played outside that evening and ate dinner at appellant's house. Mrs. Bowling did not mention eating dinner and testified that D.S. stayed inside and watched television that evening. Appellant also asks this court to discredit Mrs. Bowling's testimony because she admitted that she was upset with appellant before the incident occurred. In fact, the state elicited testimony from Mrs. Bowling that she had rebuffed appellant's sexual advances earlier that evening because she was angry with him.
 {¶ 25} The jury may believe or disbelieve any witness or accept part of what a witness says and reject the rest. State v. Antill (1964),176 Ohio St. 61, 67. In reaching its verdict, the jury should consider the demeanor of the witness and the manner in which he testifies, his connection or relationship with the prosecution or the appellant, and his interest, if any, in the outcome. Id.
 {¶ 26} Reviewing the entire record under the standard required for a manifest weight analysis, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The verdict was not contrary to the manifest weight of the evidence. Appellant's second assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.